IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Annett Holding, Inc., d/b/a TMC Logistics, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 4:14-cv-3948-RMG |
| v. | )<br>)<br>) **ORDER** |
| A1 Trucking Service, LLC, | )<br>) |
| Defendant. | )<br>) |

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 19). For the reasons set forth herein, the Court hereby GRANTS in part and DENIES in part the Motion for Summary Judgment.

**Background**

On a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, the Court must construe all inferences and factual disputes in favor of the nonmoving party. However, here there is no apparent disagreement about any of the facts.

Plaintiff is a transportation logistics company incorporated under the laws of the State of Iowa whose corporate offices and principle place of business is in Des Moines, Iowa. Defendant, A1 Trucking Service, LLC (A1), is a motor carrier incorporated in South Carolina and located in Timmonsville, South Carolina. A1 appears to be owned and/or operated by Mr. Ed Szczucki and Ms. Cindy Szczucki, whose depositions, along with the contracts between the parties, provide the factual basis of the summary judgment filings.

On October 19, 2013, the Okonite Company contracted with Plaintiff TMC Logistics (TMC) to transport twenty-one (21) reels of cable from South Carolina to North Carolina. TMC contracted with A1 to haul the load, and the two parties signed a Contract Carrier Agreement on

December 19, 2013. (Dkt. No. 19 at 1; Dkt. No. 19 at 1). The Agreement is attached to the Motion for Summary Judgment as Exhibit 2. (Dkt. No. 19-2). On December 20, 2013, the parties signed a Rate Confirmation sheet and A1 picked up the freight from Okonite in Orangeburg, SC. A1 then transported the freight to its trucking yard in Timmonsville, SC.

Finding a mechanical issue with the tractor that was intended to haul the load, Mr. Szczucki disconnected the trailer from the tractor and took the tractor to be repaired. The trailer and the reels were stolen from A1's unlocked trucking yard on the morning of December 23, 2013. (Dkt. No. 19 at 5, citing C. Szczucki Dep. 56:25-27). Okonite then demanded payment for the stolen freight and TMC reimbursed Okonite $110,703.19. (Dkt. No. 19 at 2). TMC requested that A1 reimburse it for the stolen freight and A1 refused to do so.[1] Plaintiff then filed this suit, alleging five causes of action: (1) Breach of Contract; (2) violation of the Carmack Amendment to the Interstate Commerce Act; (3) Negligence; (4) Contractual Indemnity; and (5) Equitable Indemnity. (Dkt. No. 1).

## Analysis

### A. Legal Standard

Summary judgment is only appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the

---

[1] A1 also advises that it has reported a claim to its insurer, which has not honored the claim. (Dkt. No. 21 at 2).

2

initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### B. Plaintiff's Claims

Plaintiff has moved for summary judgment on all five of its claims. Defendant has filed a very short brief in response, addressing the Carmack Amendment claim directly, and the contract and negligence-related claims more broadly. Because it appears that the contract and negligence causes of action are preempted by federal law pursuant to the Carmack Amendment, the parties' arguments with respect to the state claims are considered only insofar as the negligence analysis is relevant to liability under the Carmack Amendment.

#### 1. The Carmack Amendment

The Carmack Amendment is a law governing motor carrier liability, initially adopted by Congress as an amendment to the Interstate Commerce Act of 1887. It is "a comprehensive exercise of Congress's power to regulate interstate commerce. As a result it has long been interpreted to preempt state liability rules pertaining to cargo carriage, either under statute or common law . . . 'there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it.'" *5K Logistics, Inc. v. Daily*

3

*Exp., Inc.*, 659 F.3d 331, 335 (4th Cir. 2011) (quoting *Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913)). The Carmack Amendment provides that a carrier is liable "for the actual loss or injury to the [transported] property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country. . . ."

Courts have generally interpreted the Carmack Amendment's language to impose "something close to strict liability" upon carriers. *See, e.g. 5K Logistics, Inc. v. Daily Exp., Inc.*, 659 F.3d 331, 335 (4th Cir. 2011) (quoting *Mitsui Sumitomo Ins. Co., Ltd. v. Evergreen Marine Corp.*, 621 F.3d 215, 217 (2d Cir. 2010) (quoting *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 9 (1st Cir. 2003))). According to the Supreme Court, a party seeking to recover must establish a prima facie case, whereupon the burden shifts to the carrier to prove that they were free from negligence and that the damage or loss resulted from a statutorily excepted cause such as an act of god, war, or the inherent vice of the goods. *Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964).

Here, there is no dispute that the freight arrived at A1's facility in good condition, and that before leaving the carrier's possession, it was lost in its entirety. According to Plaintiff, these facts are therefore sufficient to meet the three required elements of a prima facie case: 1) delivery of goods in good condition to the carrier; 2) arrival to their destination in damaged condition; and 3) the amount of damages. (Dkt. No. 19 at 5, citing *Missouri Pac. R.R. Co*, 377 U.S. at 138; *Duck Head Footwear v. Mason and Dixon Lines, Inc.*, 41 Fed. App'x 692, 698 (4th Cir. 2002)).

Defendant makes two arguments defending itself from Carmack Amendment liability in its Response to the Motion for Summary Judgment. First, it contends that the Amendment "has

4

no application, in this action, as all parties acknowledge that the cable was stolen." (Dkt. No. 21 at 3). Second, it argues that it was not negligent in leaving the freight unattended while its tractor was being repaired. (*Id.*).

As to whether the Carmack Amendment is applicable where goods have been stolen, or are alleged to have been stolen, the clear language of the statute indicates that it is intended to address impose liability for "the actual loss or injury to the property caused by" the carrier. 42 U.S.C. § 14706. The cargo, having disappeared from Defendant's property, was certainly subject to an "actual loss" of the most severe variety. Defendant argues that because the prima facie elements as they are normally recited require that the plaintiff show "damaged" goods rather than "lost" goods, that Carmack Amendment cannot apply where goods are stolen. This interpretation is overly formalistic, and neglects the plain meaning of the statute, which was clearly intended to address instances of loss as well as damage. The statute was written to consolidate the handling of carrier-related claims, and it includes carefully crafted exemptions for certain extreme scenarios. Reading an additional exemption into the law for a rather commonplace occurrence would have the perverse effect of multiplying the number and confusion of cases brought under state law against carriers. Plaintiff's view, which invokes the Carmack Amendment to claims for stolen goods, is also widely accepted by the courts. *See, e.g. AIG Europe, S.A. v. Locust Point Terminal Corp.*, 1998 WL 1347, *2 (4th Cir. 1998) (applying the Carmack Amendment in a case of stolen goods and explaining that "to establish a prima facie case for recovery against [Defendant], [Plaintiff] must prove: (1) that intact containers were delivered to [Defendant] and (2) that [Defendant] delivered less than intact containers" to their destination.).

Having found that Plaintiff has succeeded in presenting a prima facie case, the burden is therefore on Defendant to show 1) that its negligence did not cause the loss of the freight; and 2) that one of the statutory exemptions (an act of god, an act of war or a public enemy, an act or default of the shipper, an act of public authority, or the inherent vice or nature of the goods transported) applies. *See Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 139 (1964) (noting that even where damage to freight resulted from "other causes, such as the acts of third parties," there is no exception from carrier liability under the Carmack Amendment). Defendant has argued that the question of whether a particular set of actions constitute negligence is normally a question for the jury, inappropriate for resolution on a Rule 56 motion. *See Vaughn v. A. E. Green Co.*, 277 S.C. 392, 393 (1982), (finding that where two witnesses gave affidavits testifying that defendant's employees knew that using gasoline to clean around a pilot light was dangerous and nonetheless used gasoline and started a fire, the question of whether such behavior was negligent was for the jury) (citing cases collected at West's S.C. Digest, Key No. 181(2)). However, the Response includes no discussion of the statutory exemptions. Because no evidence has been presented, and no argument made, that could carry Defendant's burden to show an applicable exemption from Carmack Amendment liability, the Court hereby grants summary judgment to Plaintiff on its Carmack Amendment claim.

## 2. State Negligence and Contract Claims

Plaintiff acknowledges in its Motion for Summary Judgment that the Carmack Amendment preempts its state claims, but presents the state claims as alternative grounds for relief in the event that the Court finds the Carmack Amendment inapplicable. (Dkt. No. 19 at 6, citing *5K Logistics, Inc.* 659 F.3d 331 at 335). Having found the Carmack Amendment the

appropriate remedy for Plaintiff's alleged injuries, the Court denies Plaintiff's Motion for Summary Judgment as to the remaining state claims,

## Conclusion

The Court GRANTS the Motion for Summary Judgment (Dkt. No. 19) as to the Carmack Amendment claim and DENIES the motion as to the remaining state claims,

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

August 24, 2015
Charleston, South Carolina